152 F.3d 1115
 58 Soc.Sec.Rep.Ser. 27, 98 Cal. Daily Op. Serv. 6294,
98 Daily Journal D.A.R. 8703
Gregoria GRIJALVA; Carol Knox; Mary Lea; Beatrice
Bennett; and Mildred Morrell, individuals and
representatives of a class of persons
similarly situated, Plaintiffs-Appellees,
v.
Donna E. SHALALA, Secretary, Health and Human Services,
Defendant-Appellant,
v.
Josephine BALISTRERI; Fred S. Scherz; Kevin A. Driscoll;
Mina Ames; Edmundo B. Cardenas; Arline T. Donoho;
Patricia Sloan; Beth Robley; Goldie M. Powell; Richard
Baxter, Plaintiffs-Intervenors.
 No. 97-15877.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 13, 1998.
Decided Aug. 12, 1998.
 
 John F. Daly, United States Department of Justice, Washington, DC, for defendant-appellant.
 Sally Hart Wilson, Center for Medicare Advocacy, Inc., Tucson, Arizona, for plaintiffs-appellees.
 Dorothy Siemon, Bruce Vignery, American Association of Retired Persons, Washington, DC, for Amici Curiae.
 Appeal from the United States District Court for the District of Arizona; Alfredo C. Marquez, District Judge, Presiding. D.C. No. CV-93-00711-ACM.
 Before: CHOY, SCHROEDER, and WIGGINS, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Medicare beneficiaries enrolled in health maintenance organizations ("HMOs") in Arizona sued the Secretary of Health and Human Services ("Secretary"). Their suit alleged a failure to enforce due process requirements and a failure to monitor HMO denials of medical services to enrolled Medicare beneficiaries. The district court granted Plaintiffs summary judgment, holding that HMO denials of medical services to Medicare beneficiaries constitute state action and that the regulations issued by the Secretary fail to provide due process. The district court issued an injunction mandating certain procedural protections for Medicare beneficiaries enrolled in HMOs. The Secretary appeals. We affirm.
 
 I. Background
 
 2
 Congress passed the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq., in 1965 to provide a federal health insurance program for the elderly and the disabled. Today, a Medicare beneficiary can receive Medicare services in two different ways. The first is to receive Medicare on a fee-for-service basis. Under this option, the beneficiary goes to a health care provider for the necessary covered services; either the provider or the beneficiary will be reimbursed by the government for the cost of the services. The second, newer option is to enroll in an HMO or other eligible organization.[1] See 42 U.S.C. § 1395mm(b).
 
 
 3
 In 1982, Congress authorized the Secretary to enter into "risk-sharing" contracts with HMOs. See § 1395mm. Under these contracts, HMOs provide to enrolled Medicare beneficiaries all the Medicare services provided in the statute, see § 1395mm(c)(2)(A), in exchange for a monthly flat payment from the Secretary, see § 1395mm(a).
 
 
 4
 The Medicare statute establishes in § 1395mm(c) procedural protections for those beneficiaries that enroll in HMOs. Among these, the HMO must "provide meaningful procedures for hearing and resolving grievances between the organization ... and members enrolled ...." § 1395mm(c)(5)(A). HMO members must also have certain appeal rights:
 
 
 5
 A member enrolled with an eligible organization under this section who is dissatisfied by reason of his failure to receive any health service to which he believes he is entitled and at no greater charge than he believes he is required to pay is entitled, if the amount in controversy is $100 or more, to a hearing before the Secretary to the same extent as is provided in [42 U.S.C. § 405(b) ], and in any such hearing the Secretary shall make the eligible organization a party. If the amount in controversy is $1,000 or more, the individual or eligible organization shall, upon notifying the other party, be entitled to judicial review of the Secretary's final decision as provided in [42 U.S.C. § 405(g) ]....
 
 
 6
 § 1395mm(c)(5)(B).
 
 
 7
 The Secretary created additional appeal protections in subsequent regulations. See 42 C.F.R. §§ 417.600--417.638. Under § 417.604, each HMO must establish appeal procedures and ensure that beneficiaries receive written information about the appeal and grievance procedures. See § 417.604(a). If the HMO makes an "organization determination" (defined in § 417.606) adverse to the enrollee, "it must notify the enrollee of the determination within 60 days of receiving the enrollee's request for payment for services." § 417.608(a)(1). An example of an adverse organization determination is an HMO's decision that certain medical services are not covered by Medicare. The notice to the beneficiary must "[s]tate the specific reasons for the determination" and inform the enrollee of his or her "right to a reconsideration." § 417.608(b). Failure to provide timely notice is an adverse determination and may be appealed by the enrollee. See § 417.608(c).
 
 
 8
 If the enrollee is dissatisfied with an adverse determination, a request for reconsideration may be filed within 60 days from the date of the notice. See §§ 417.614 & 417.616(b). Within 60 days of the request, the HMO may make a decision fully favorable to the enrollee. See § 417.620(a). If it decides to make a decision that partially or completely affirms the adverse determination, it must explain its decision in writing and forward the case to the Health Care Financing Administration ("HCFA"). See § 417.620(b). If the enrollee is dissatisfied with the result of the reconsideration, and the amount remaining in controversy is $100 or more, the enrollee has a right to a hearing before an administrative law judge ("ALJ"). See § 417.630. The enrollee can appeal that hearing decision to the Appeals Council and then to the district court. See §§ 417.634 & 417.636.
 
 
 9
 The Secretary possesses a number of sanctions to ensure HMO compliance with the Medicare statute and the Secretary's regulations. First, the Secretary "may not enter into a contract ... with an [HMO] unless it meets the requirements of [§ 1395mm(c) ] and [§ 1395mm(e) ]." 42 U.S.C. § 1395mm(c)(1). The specified sections require the HMO, inter alia, to provide all Medicare services to eligible enrollees, to have particular open enrollment periods, to provide enrollees annually with information on their rights, including appeal rights, to provide covered services "with reasonable promptness," to provide the aforementioned procedural protections, and not to exceed certain limits on rates charged to beneficiaries and the Secretary. §§ 1395mm(c) & 1395mm(e).
 
 
 10
 Second, the Secretary may terminate any contract with an HMO if she determines that the HMO has not met the terms of the contract or has not satisfied the statutory or regulatory requirements. See § 1395mm(i)(1). If the Secretary determines that an HMO has failed to provide necessary covered services to an enrollee and that failure has adversely affected the individual, the Secretary may seek civil money penalties, suspend enrollment, or suspend payment to the HMO. See § 1395mm(i)(6).
 
 
 11
 In 1993, five Medicare beneficiaries enrolled in an Arizona HMO sued the Secretary. Among other claims, Plaintiffs alleged that the Secretary "has failed and refused to take effective action to implement beneficiaries' notice and appeal rights when they are denied health care services by their HMOs," and "has failed and refused to provide Medicare beneficiaries enrolled in HMOs with a procedure of obtaining review of HMO denial decisions contemporaneously with the denial decisions." In a decision not on appeal, the district court certified a nationwide plaintiff class.
 
 
 12
 In October 1996, the district court granted partial summary judgment to Plaintiffs on the claims described above. See Grijalva v. Shalala, 946 F.Supp. 747 (D.Ariz.1996). The court held that the "organization determinations" made by HMOs constitute state action, triggering constitutional due process requirements. See id. at 751-53. The court also held that the regulations promulgated by the Secretary regarding adverse determinations by HMOs fail to provide sufficient due process to enrollees under Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). See Grijalva, 946 F.Supp. at 756-60. In particular, the district court found that the notices issued by HMOs failed to provide adequate notice: they were often illegible, failed to specify the reason for the denial, and failed to inform the beneficiary that he or she had the right to present additional evidence to the HMO. See id. at 757-59. Therefore, "[s]ubsequent due process, available in the administrative review phase of the appeal, comes too late in many cases...." Id. at 759. The district court also found that the language of § 1395mm(c)(1) ("The Secretary may not enter into a contract ... with an eligible organization unless it meets the requirements of this subsection") was mandatory, requiring the Secretary to enforce her regulations by refusing to renew a contract with an HMO if the denial notices of that HMO fail to provide due process. See id. at 760.
 
 
 13
 The district court found that the Secretary violated § 1395mm(c)(1) by entering into a contract with any HMO that failed to provide timely notice for any and all denials of service. The court held that the notice must be legible (at least 12-point type), state clearly the reason for the denial, inform the enrollee of all appeal rights, explain hearing rights and procedures, and provide "instruction on how to obtain supporting evidence, including medical records and supporting affidavits from the attending physician." Id. at 760-61. The district court also held that any hearing must be "informal, in-person communication with the decisionmaker," available upon request for all service denials, and timely. Id. at 761. The district court also required expedited hearings for "acute care service denials." Id.
 
 
 14
 On March 3, 1997, the district court issued an injunction mandating the above requirements. See Grijalva v. Shalala, No. CIV 93-711 TUC ACM, 1997 WL 155392 (D.Ariz. Mar.3, 1997).
 
 
 15
 The Secretary appealed the district court's decision in May 1997. The district court granted her a stay of its injunction pending this appeal.
 
 II. Standards of Review
 
 16
 We review a grant of summary judgment de novo. See Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court applied correctly the relevant substantive law. See id. We may affirm on any ground supported by the record. See Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1556 (9th Cir.1991).
 
 
 17
 We review the scope of an injunction for an abuse of discretion or application of erroneous legal principles. See SEC v. Interlink Data Network, 77 F.3d 1201, 1204 (9th Cir.1996).
 
 III. Discussion
 A. State Action Doctrine
 
 18
 The Secretary appeals the district court's holding that HMO denials of medical services to enrolled Medicare beneficiaries constitute state action and therefore invoke constitutional due process protections.[2]
 
 
 19
 The actions of private parties are not subject to the requirements of constitutional due process unless they can fairly be considered government action. See Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). We use the same standards to attribute the actions of private actors to the federal government under the Fifth Amendment as we do to attribute private actions to state governments under the Fourteenth Amendment. See Kitchens v. Bowen, 825 F.2d 1337, 1340 (9th Cir.1987).
 
 
 20
 The actions of private entities constitute state action under particular circumstances. In order to show that a private action is in fact state action, the plaintiff must show that " 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.' " Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). The government's regulation of the private actor is insufficient alone to show federal action. See Blum, 457 U.S. at 1004, 102 S.Ct. 2777; Jackson, 419 U.S. at 350, 95 S.Ct. 449. Government action exists if there is a symbiotic relationship with a high degree of interdependence between the private and public parties such that they are "joint participant[s] in the challenged activity." See Burton v. Wilmington Parking Auth., 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Government action exists if the challenged private action occurs under government compulsion. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 170-71, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The government must do more, however, than merely acquiesce in the challenged action. See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 164, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (holding that government inaction is insufficient for state action). A detailed inquiry into the facts of the particular case may be necessary to determine whether there is state or federal action. See Jackson, 419 U.S. at 351, 95 S.Ct. 449.
 
 
 21
 In this case, the question is whether the challenged action--HMO denials of services to Medicare beneficiaries with inadequate notice--may fairly be treated as that of the federal government. We agree with the district court's cogent analysis and conclusion that, in the circumstances of the Secretary's regulation of and delegation of Medicare coverage decisions to HMOs, HMO denials of services to Medicare beneficiaries with inadequate notice constitute federal action.
 
 
 22
 We find that HMOs and the federal government are essentially engaged as joint participants to provide Medicare services such that the actions of HMOs in denying medical services to Medicare beneficiaries and in failing to provide adequate notice may fairly be attributed to the federal government. The Secretary extensively regulates the provision of Medicare services by HMOs. HMOs are required, by the Medicare statute and their contracts with the Secretary, to comply with all federal laws and regulations. The Secretary is required to ensure, inter alia, that HMOs provide adequate notice and meaningful appeal procedures to beneficiaries. The Secretary pays HMOs for each enrolled Medicare beneficiary (regardless of the services provided). The federal government has created the legal framework--the standards and enforcement mechanisms--within which HMOs make adverse determinations, issue notices, and guarantee appeal rights. Medicare beneficiaries enrolled in HMOs may appeal an HMO's adverse determination to the Secretary, who has the power to overturn the HMO's decision. Each of these factors alone might not be sufficient to establish federal action. Together they show federal action. See Catanzano v. Dowling, 60 F.3d 113, 117-120 (2d Cir.1995) (similar analysis in Medicaid context); J.K. v. Dillenberg, 836 F.Supp. 694, 697-99 (D.Ariz.1993) (same).
 
 
 23
 The Secretary argues that the Supreme Court case of Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), mandates a finding that HMO adverse determinations are not state action. We disagree.
 
 
 24
 In Blum, the Supreme Court held that nursing home decisions made by doctors and administrators to transfer patients to other facilities, thereby terminating their Medicaid benefits, did not constitute state action. The Court held that the decisions at issue in the case turned "on medical judgment made by private parties according to professional standards that are not established by the State." 457 U.S. at 1008, 102 S.Ct. 2777. Because state officials did not have the power to approve or disapprove the nursing home decisions, but just altered the level of Medicaid benefits accordingly, the Court held that the decisions were not state action. See id. at 1010, 102 S.Ct. 2777.
 
 
 25
 Unlike the nursing home doctors and administrators in Blum, the HMOs in this case are not making decisions to which the government merely responds. HMOs are following congressional and regulatory orders and are making decisions as a governmental proxy--they are deciding that Medicare does not cover certain medical services. In Blum, by contrast, the nursing homes decided that certain medical services were no longer medically necessary. While such an inquiry may occur in HMO service denials, the decisions in the case at hand are more accurately described as coverage decisions--interpretations of the Medicare statute--rather than merely medical judgments (particularly when no reason for the denial is given other than that the service does not meet "Medicare guidelines ... based upon [the HMO's] understanding and interpretation of Medicare ... coverage policies and guidelines," to quote a typical notice provided by Plaintiffs).
 
 
 26
 The district court's reasoning and holding that HMO service denials are federal action therefore do not run counter to Blum. As noted by the district court, the government cannot avoid the due process requirements of the Constitution merely by delegating its duty to determine Medicare coverage to private entities. See 946 F.Supp. at 752; see also Burton, 365 U.S. at 725, 81 S.Ct. 856 ("But no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be.").
 
 
 27
 We hold, therefore, that, when denying medical services to enrolled Medicare beneficiaries, HMOs are federal actors.
 
 B. Due Process and Mathews v. Eldridge
 
 28
 The parties agree that the balancing test used by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), applies to determine the necessary procedural protections to ensure that due process is provided to Medicare beneficiaries enrolled in HMOs.
 
 
 29
 In Mathews v. Eldridge, the Supreme Court considered the sufficiency of the procedures by which Social Security disability benefits were terminated. See 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Supreme Court held that constitutional due process is flexible, demanding particular protections depending on the situation. See id. at 334, 96 S.Ct. 893. The requirements of due process in a particular situation depend on an analysis of three factors:
 
 
 30
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the functions involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.
 
 
 31
 Id. at 335, 96 S.Ct. 893. A court must balance these factors to determine whether the particular additional procedural safeguards sought by a plaintiff are required in a given situation.[3] See id.
 
 
 32
 We agree with the district court's analysis of the Eldridge factors and its conclusion that due process requires additional protections for Medicare beneficiaries enrolled in HMOs.
 
 1. Private Interest at Stake
 
 33
 The district court held that the private interest at stake from an HMO's initial denial of Medicare coverage is the potential that medical care will be precluded altogether. The court held that this interest is a substantial private interest in additional protections such as timely and effective notice of service denials. We agree.
 
 
 34
 In Eldridge, the Court held that the private interest at stake was the individual's interest in "uninterrupted receipt" of disability benefits. 424 U.S. at 340, 96 S.Ct. 893. The Court held that this interest was not based on financial need (unlike the situation of the welfare recipient in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)) and does not implicate a high degree of potential deprivation. See id. at 340-41, 96 S.Ct. 893.
 
 
 35
 The district court was correct in holding that Plaintiffs' interest in Medicare benefits is greater than the interest of the plaintiff in Eldridge. As the district court noted, "[u]nlike Eldridge, the deprivation suffered from an HMO denial to provide care cannot so easily be remedied by retroactive recoupment of benefits." 946 F.Supp. at 757. An HMO's denial of coverage is an initial refusal to provide any medical services. The mere fact that the enrollee may be able to go elsewhere and pay for the services herself is of little comfort to an elderly, poor patient--particularly one who is ill and whose skilled nursing care has been terminated without a specific reason or description of how to appeal.
 
 
 36
 The Secretary argues that the district court erred by "adjudicating a complex procedural scheme as falling short of basic standards of fairness, without conducting the sort of detailed inquiry needed." For example, the Secretary argues, the district court should have distinguished between different types of medical services and their urgency when considering this first Eldridge factor, the magnitude of the private interest at stake. The Secretary also argues that the district court's finding that the interests of Medicare HMO enrollees are "especially" great because they may not receive immediate medical care is erroneous because some beneficiaries can seek those services elsewhere (and then seek reimbursement from the HMO) or disenroll from the HMO. The Secretary's arguments fail. Although, in some cases, the effect of service denial may be remedied easily after the fact, the potential for irreparable damage is surely great when it comes to denial of medical services (particularly denial without notice of any reason for the denial), unlike the suspension of disability benefits pending review as in Eldridge. In many, if not most, cases, the denial of coverage may result in total failure to receive the services.
 
 
 37
 The Secretary argues that the district court failed to recognize that the Medicare program is not need-based, a fact which the Secretary argues mandates holding against additional procedural protections. The Secretary cites to Eldridge for this proposition. The Court in Eldridge, however, discussed the fact that the disability benefits were not need-based in order to distinguish the case from that in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), where the Court had held that a hearing was necessary prior to the suspension of welfare benefits. The Court did not hold that a program has to be need-based in order for this factor to weigh in favor of additional protections.
 
 
 38
 Other courts have found on similar facts that a significant private interest is at stake that weighs in favor of additional protections. See, e.g., Kraemer v. Heckler, 737 F.2d 214, 222 (2d Cir.1984) ("In applying the balancing test, the private interest at stake [in the termination of Medicare coverage] should be weighed more heavily than in Eldridge because of the astronomical nature of medical costs."); Vorster v. Bowen, 709 F.Supp. 934, 946 (C.D.Cal.1989) ("The private interest, in this case, is the claimant's need to obtain reimbursement for medical bills that he or she has already paid. That interest is fairly great. Congress enacted the [Medicare] program because of the special coincidence of medical needs and financial problems of the elderly."). The interest of the HMO enrollees in medical services weighs in favor of additional procedural protections beyond that offered by the Secretary's original regulations.
 
 2. Risk of Erroneous Deprivation
 
 39
 The district court also held that factor two weighed in favor of greater procedural protections for Medicare beneficiaries enrolled in HMOs. The court reviewed Plaintiffs' analysis of notice failures and conducted its own review of the notices provided to Plaintiffs. The court held that the notices failed to provide adequate explanation for the denials. See 946 F.Supp. at 757-58. We agree. This failure creates a high risk of erroneous deprivation of medical care to Medicare beneficiaries. The appeal rights and other procedural protections available to Medicare beneficiaries are meaningless if the beneficiaries are unaware of the reason for service denial and therefore cannot argue against the denial. "Due process requires notice that gives an agency's reason for its action in sufficient detail that the affected party can prepare a responsive defense." Barnes v. Healy, 980 F.2d 572, 579 (9th Cir.1992). Therefore, inadequate notice creates the risk of erroneous deprivation by undermining the appeal process.
 
 
 40
 The Secretary attacks the district court's analysis of this factor by arguing that the court simply identified an "arguable problem" faced by enrollees--inadequate notice--rather than address whether that problem actually results in deprivations. The Secretary argues that the district court "simply assumed that the perceived failures of notice resulted in fewer appeals, and that more appeals would diminish erroneous deprivations." The Secretary fails to recognize the real problem: Inadequate notice renders the existence of an appeal process meaningless. Moreover, the question established by Eldridge is not whether the inadequate notices actually resulted in erroneous deprivations, but whether the inadequate notices created an unjustifiably high risk of erroneous deprivation. Because due process has at its foundation the notion of adequate notice, the risk of erroneous deprivation caused by ineffective notices points towards the need for added procedural protections for Medicare beneficiaries enrolled in HMOs.
 
 3. The Government's Interest
 
 41
 The Secretary argues that the district court paid only cursory attention to this factor, dismissing the government's concerns. The Secretary argues that the procedures sought by plaintiffs would impose a large burden on HMOs, which would accordingly affect the benefits received by enrollees.
 
 
 42
 The district court did not engage in as detailed an analysis of this third factor as of the other two. A shorter analysis, however, does not mean the analysis is cursory or dismissive. The Secretary has failed to show that the added procedural protections sought by Plaintiffs would result in significant additional costs to the government. Unlike the plaintiff in Eldridge, Plaintiffs do not seek a hearing prior to every denial, which would greatly increase costs. Adequate notices do not impose a burden on HMOs that outweighs the beneficiaries' need for them. "[A] weighing of the Mathews [v. Eldridge] factors suggests that the administrative burden of providing an explanation for denying a [certain benefit] is minimal in light of the added potential for spotting erroneously withheld [benefits]." Barnes v. Healy, 980 F.2d 572, 579 (9th Cir.1992). The Secretary fails to advance any convincing argument that an additional burden on the government outweighs the effects of the other factors such that additional procedural safeguards are not necessary.
 
 
 43
 Taken together, the Eldridge factors point to a need for additional procedural protections for Medicare beneficiaries enrolled in HMOs, in particular for adequate notice of service denials, including the specific reason for the denial and an explanation of appeal rights, and expedited review for critical care denials. We therefore affirm the district court's holdings on Eldridge.
 
 C. The Scope of the Injunction
 
 44
 The Secretary challenges the scope of the injunction issued by the district court.[4] The scope of an injunction is reviewed for an abuse of discretion or application of erroneous legal principles. See SEC v. Interlink Data Network, 77 F.3d 1201, 1204 (9th Cir.1996). "When injunctive relief is sought against a state agency or official, such relief 'must be no broader than necessary to remedy the constitutional violation.' " Barnes v. Healy, 980 F.2d 572, 576 (9th Cir.1992) (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1086 (9th Cir.1986)).
 
 
 45
 The Secretary argues vociferously that the injunction issued by the district court was widely and irrationally broad in scope. For example, the Secretary repeatedly ridicules the district court's requirement of 12-point type for all notices of service denials. The scope of the district court's injunction, however, is not either an abuse of discretion or the result of application of erroneous legal principles.
 
 
 46
 The district court required legible (which requires 12-point type for senior citizens) and clear notices that adequately explain to beneficiaries the reasons for the denial of services and inform them of their appeal rights. The court required any hearings to be informal and in-person. An abuse of discretion is not apparent in these requirements. Moreover, many of them are already required by the Medicare statute or the Secretary's regulations (which might make them redundant, but does not make them an abuse of discretion). The court also required the Secretary to monitor the behavior of HMOs. This requirement is not an abuse of discretion given that Congress implicitly required such in the Medicare statute by forbidding the Secretary from entering into contracts with HMOs that did not comply with the statute or the regulations and by providing the Secretary with the power to sanction the HMOs.
 
 
 47
 The Secretary argues that the district court abused its discretion by prohibiting the Secretary from entering into new contracts with HMOs that fail to provide the procedural protections mandated by the court. The Secretary argues that Congress provided the Secretary with a wide range of enforcement mechanisms, and that the district court could not require the Secretary to use the harshest mechanism. This argument fails. The Medicare Act mandated that the Secretary "may not enter into a contract ... with an [HMO] unless it meets the requirements of [§ 1395mm(c) ] and [§ 1395mm(e) ]." 42 U.S.C. § 1395mm(c)(1). Under its clear meaning, this provision is not permissive; to the contrary, it is mandatory. The district court did not err or abuse its discretion.
 
 
 48
 The Secretary notes that, since the district court's summary judgment and injunction in favor of Plaintiffs, she has promulgated new regulations providing additional procedural protections for Medicare beneficiaries enrolled in HMOs. She asks us to review and modify the district court's injunction accordingly. Finding it unnecessary to do so, we decline her invitation. The district court has continuing jurisdiction over the modification of the injunction. See Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1030 (9th Cir.1985) (declining to remand to district court with directions to modify injunction, noting that the party "may apply directly" to the district court for modification in light of post-trial events). The Secretary may move in the district court for a modification of its injunction.
 
 IV. Conclusion
 
 49
 For the foregoing reasons, we AFFIRM the district court's summary judgment and injunction in favor of Plaintiffs.
 
 
 50
 AFFIRMED.
 
 
 
 [1]
 Here, "HMOs" refers to all eligible health services providers, including HMOs and other "competitive medical plans." 42 U.S.C. § 1395mm(b)
 
 
 [2]
 The district court held that such HMO denials constitute "state action." We interpret this as holding that such HMO actions constitute government action, specifically federal action
 
 
 [3]
 The Secretary argues that, in general, the Secretary's views on the appropriate level of procedural protections should be accorded "great deference." There is nothing in Mathews v. Eldridge or subsequent cases to suggest that such is necessary or advisable
 
 
 [4]
 In addition, the Secretary argues that the district court should not have issued any injunction, because the proper course, if the existing regulations were insufficient to provide due process, was to remand the case to the Secretary for her to produce new regulations comporting with due process. The cases cited by the Secretary, however, do not support this argument in the present case
 For example, in Thompson v. United States Dep't of Labor, 885 F.2d 551 (9th Cir.1989), this court remanded the case to the Secretary on very particular facts. The Secretary had entered into a settlement agreement with a whistleblower who had sued the Department. Despite prior discussions on the question, the agreement was silent on the question of whether the Secretary could dismiss the complaints with prejudice. The Secretary then dismissed the complaints with prejudice. This court held that the Secretary could not dismiss the complaints with prejudice and remanded the case for the Secretary to decide if it still wanted to enter into the settlement agreement. See 885 F.2d at 558.
 This case is not analogous. The Secretary never had adjudicative jurisdiction over this case. The Secretary does not provide any case that states that this court must remand to her on the facts of this case. The issuance of an injunction was within the district court's equitable powers. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-13, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (holding that a district court possesses the equity jurisdiction to issue an injunction, provided that it has subject matter jurisdiction and that Congress has not mandated otherwise).