Jennifer L. **HIGGINS, et al., Plaintiffs,**

**v.**

**Margaret SPELLINGS, Secy. of the Dept. Of Education, Defendant.**

**No. 07–0495–CV–W–SOW.**

United States District Court,
W.D. Missouri,
Western Division.

March 9, 2009.

James Marshal Smith and Amber C. Cutler, Kansas City, MO, for Plaintiffs.

Jeffrey P. Ray, Assistant U.S. Attorney, Western District of Missouri, Kansas City, MO, for Defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the Court are plaintiffs Jennifer Higgins and Barbara Riggins' Motion for Summary Judgment (Doc. # 39) and defendant Margaret Spellings, Secretary of the Department of Education's Motion for Judgment as a Matter of Law and Suggestions in Opposition to Plaintiffs Motion for Summary Judgment (Doc. # 48).

In response to plaintiffs' Motion for Summary Judgment, defendant Margaret Spellings, Secretary of the Department of Education ("the Secretary" or "the DOE") filed a Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 52. The above-captioned case is being litigated pursuant to the Administrative Procedures Act and, thus, requires the Court to determine the proprietary of agency action based upon a review of the administrative record, after consideration of the parties' legal arguments. Accordingly, in their motion, the DOE proposes that the parties' summary judgment pleadings be treated as respective motions for judgment on the record pursuant to the Federal Rule of Civil Procedure 52. Plaintiffs do not oppose such a request. Likewise, the Eighth Circuit has observed it may be more appropriate, in circumstances like the present case where the facts and records have been stipulated to by the parties, to consider any "summary judgment" motions as "a mutual request for trial on a stipulated record," requiring entry of judgment under Federal Rule of Civil Procedure 52. *Crow v. Gullet,* 706 F.2d 856, 858 n. 3 (8th Cir.1983). As a result, this Court will treat both pending motions as Motions for Judgment as a Matter of Law pursuant to Rule 52.

### I. *Standard*

Under Fed.R.Civ.P. 52(a), after due consideration of the evidence and arguments, a trial court merely must supply adequate findings of fact and conclusions of law to support its order or judgment. *Parcel 49C Ltd. Partnership v. United States,* 31 F.3d 1147, 1150 (Fed.Cir.1994). On appeal, the Court's findings of fact are reviewed for clear error. *Moore v. Novak,* 146 F.3d 531, 534 (8th Cir.1998). According to the Eighth Circuit:

Under this standard, we will overturn a finding of fact only if it is not supported by substantial evidence in the record, if the finding is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error has been made. A district court's choice between two permissible views of evidence cannot be clearly erroneous.

*Estate of Davis v. Delo,* 115 F.3d 1388, 1393–94 (8th Cir.1997) (*citation omitted*). However, conclusions of law and "[m]ixed questions of law and fact that require the consideration of legal concepts and the exercise of judgment about the values of the underlying legal principles are ... reviewed *de novo.*" *Darst–Webbe Tenant Ass'n Bd. v. St. Louis Housing Authority,* 339 F.3d 702, 710–11 (8th Cir.2003).

In the above-captioned case, plaintiffs Higgins and Riggins are seeking judicial review of the DOE's administrative decision denying their applications for discharge of their federally-guaranteed student loans. Plaintiffs seek review pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500–706.

The APA regulates federal agency procedures, including promulgating rules and regulations, 5 U.S.C. § 553, and conducting administrative adjudications. 5 U.S.C. § 554. The APA provides for judicial review of final agency actions in the event the agency conduct is not subject to some other legal remedy. 5 U.S.C. § 706. Section 706 of the APA provides that judicial review of agency action shall be based on "the whole record." The whole record refers to the record before the agency at the time of its decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) The APA operates as a partial waiver of the federal government's sovereign immunity with respect to litigation to review agency actions. 5 U.S.C. § 702.

The APA authorizes a reviewing court to "hold unlawful and set aside agency action" that is:

   (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, or

   (b) unconstitutional,

   (c) in excess of statutory jurisdiction,

   (d) in contradiction to established procedures, or

   (e) in certain special cases, unsupported by substantial evidence.

5 U.S.C. § 706(2)(A)-(E). Plaintiffs seek judicial review only on the first two grounds, specifically that (1) the DOE acted arbitrarily and capriciously, and (2) the DOE violated the procedural due process rights of plaintiffs. When a Court is reviewing an agency's decision, the Court utilizes the arbitrary and capricious standard. The Supreme Court has provided several definitions of arbitrary and capricious. In *Overton Park*, 401 U.S. at 416, 91 S.Ct. 814, the Court held that agency action is arbitrary and capricious where there is no rational connection between the facts the agency found and the decision it made. The Supreme Court has also held that an agency decision is arbitrary and capricious where the agency's offered explanation for its decision runs counter to the evidence before the agency. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

When claims arise out of violations of the Constitution, like plaintiffs claim that the DOE violated their procedural due process rights, the Court's review is *de novo*. *See McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 493, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (holding that the appropriate standard of review in evaluating the administrative adjudication of facts is whether the agency abused its discretion; the appropriate standard of review of constitutional or statutory claims is *de novo* review); *Escudero–Corona v. I.N.S.*, 244 F.3d 608, 614 (8th Cir.2001) (holding that plaintiff's due process and equal protection claims are afforded *de novo* review).

## II. *Facts*

The facts and the record in this case have been stipulated to by the parties. This case deals with federally insured student loans that were issued to plaintiffs Higgins and Riggins. Federally insured loans have no statute of limitations. The Secretary of Education is authorized to collect student loans by means of extrajudicial wage garnishments, seizure of tax refunds, and the attachment of federal benefits such as Social Security benefits received by disabled and elderly citizens. If a person is disabled and unable to work they may be subjected to all of these collection tools. However, a person may request that his or her student loans be discharged by establishing a total and permanent disability.

Defendant, the U.S. Department of Education, is an agency within the meaning of the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. Margaret Spellings, Secretary of the Department of Education, is responsible for the administration of the federally-guaranteed student loan program. Plaintiff Higgins obtained a federally-guaranteed student loan and still owes approximately $8,181.26. Plaintiff Riggins obtained a federally-guaranteed student loan in the amount of $2,500.00 to attend school in 1983.

Plaintiff Higgins requested a discharge of her student loan obligation by completing the DOE's form to request a disability discharge. Her physician completed the "Physician's Certification of Borrower's Total and Permanent Disability." Plaintiff Higgins then received a notice from Direct Loans making a preliminary determination that she met the eligibility requirements for a discharge of her student loan. The DOE received her request for a discharge on January 13, 2006, and subsequently faxed a medical information sheet to plaintiff Higgins' doctor on January 13, 2006. The DOE's internal records indicate that the med info sheet was returned blank on April 11, 2006. On April 12, 2006, plaintiff Higgins' request for a discharge of her student loan was denied on the basis that the physician failed to respond to the fax request for additional information. Plaintiff Higgins received a notice from the DOE that she did not meet the "definition of total and permanent disability for the following reason(s): Medical Review Failure."

Plaintiff Riggins completed the DOE's form to request a disability discharge, and her physician completed the "Physician's Certification of Borrower's Total and Permanent Disability." An agent for Pioneer Credit Recovery spoke to plaintiff Riggins' doctor, Alan Chan, on August 30, 2007. Dr. Chan stated that plaintiff Riggins cannot work due to chronic fatigue, inability to handle stress in a working environment, and a limited ability to focus or concentrate. On August 30, 2007, plaintiff Riggins submitted additional information regarding her receipt of Social Security benefits and her current financial status via facsimile to an individual named Connie. The DOE sent plaintiff Riggins' physician, Dr. Chan, a fax dated October 30, 2007, requesting additional information regarding plaintiff Riggins' disability. Defendant's notes state that the fax was sent on November 8, 2007. Plaintiff Riggins received a notice from the DOE that she did not meet the "definition of total and permanent disability for the following reason(s): Medical Review Failure."

### III. *Discussion*

Plaintiff Higgins and Riggins are seeking judicial review of the DOE's administrative decision denying their applications for discharge of their federally-guaranteed student loans. Students who receive federally insured student loans and later become disabled have the right to request that their loan be discharged if they become disabled. 20 U.S.C. § 1087 provides:

(a) Repayment in full for death and disability

If a student borrower who has received a loan described in subparagraph (A) or (B) of section 1078(a)(1) of this title dies or becomes permanently and totally disabled (as determined in accordance with regulations of the Secretary), then the Secretary shall discharge the borrower's liability on the loan by repaying the amount owed on the loan.

As the statute provides, Congress has mandated that the DOE "shall" discharge student loans for permanent and total disability, but only when the DOE makes such a determination in accordance with its regulations. The DOE determines if the individual meets the definition of "to-

tally and permanently disabled," which is defined by the Secretary's regulations as "[T]he condition of an individual who is unable to work and earn money because of an injury or illness that is expected to continue indefinitely or result in death." 34 C.F.R. § 682.200(b); 34 C.F.R. § 674.51(s).

The disability process begins when a borrower claims to be totally and permanently disabled and submits an application to the DOE. The DOE then reviews the application for preliminary qualification for a disability discharge. A borrower meets the initial criteria for a disability discharge if:

(1) the borrower's annual earnings do not exceed 100% of the poverty line for a family of two,

(2) the borrower is not receiving any new qualifying student loans, and

(3) the borrower's physician submits acceptable documentation certifying and establishing that the borrower is totally and permanently disabled.

34 C.F.R. § 685.213(b), (c)(1)-(2). If the DOE determines that the borrower meets these initial criteria, "the loan is conditionally discharged for up to three years from the date that the borrower became totally and permanently disabled." 34 C.F.R. § 685.213(a)(1)(i). During this three-year conditional discharge period, the borrower must maintain her eligibility and "[m]ust provide the [DOE], upon request, with additional documentation or information related to the borrower's eligibility for discharge [based on total and permanent disability]." 34 C.F.R. § 685.213(d)(5). A failure to meet such requirements during the three-year conditional period ends the disability discharge.

Plaintiffs seek judicial review on two grounds: (1) that the DOE violated the procedural due process rights of the plaintiffs in denying their applications for discharge of their student loans and (2) that

the DOE acted arbitrarily and capriciously in doing so.

## (A) PROCEDURAL DUE PROCESS

### (i) Is there a protected property right?

■ Before the Court determines whether the procedures utilized by the agency were adequate, the Court must first determine whether an interest protected by the due process clause exists. The Due Process Clause of the Fifth Amendment to the United States Constitution requires that due process must be afforded to individuals affected by government action. Procedural due process requirements only apply to government actions which threaten a deprivation of life, liberty or property. *Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 756, 125 S.Ct. 2796, 2803, 162 L.Ed.2d 658 (2005). In this context, the first issue for this Court to decide in this case is an issue of first impression—specifically, whether the availability of a disability discharge of an individual's student loan obligations is a property right protected by the Due Process Clause.

■ Property interests have been found in a number of areas: public assistance benefits, *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Social Security disability benefits, *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); public education, *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); utility services, *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); government employment, *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); and driver's license suspensions, *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Property interests do not arise whenever an individual has "an abstract need or desire for," or "unilateral

expectation of," a benefit. *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Rather, an individual must have a legitimate claim of entitlement to the benefit created and defined by an independent source, such as state or federal law or regulation. *Roth,* 408 U.S. at 577, 92 S.Ct. 2701 (1972); *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Plaintiffs argue that they have a legitimate claim of entitlement to a disability discharge because the statute in question states that if a student becomes "permanently and totally disabled (as determined in accordance with regulations of the Secretary), then the Secretary shall discharge the borrower's liability on the loan by repaying the amount owed on the loan." 20 U.S.C. § 1087(a). Plaintiffs contend that although the Secretary is given authority to promulgate regulations defining permanent and total disability, once an applicant meets the stated definition, the Secretary must discharge the loan. Plaintiffs point to the mandatory language—"*shall* discharge"—used in the statute for the proposition that this language creates the property interests necessary for due process protection. Defendant argues that plaintiffs do not have a protectable property interest in having their student loans discharged by the DOE and, thus, there was no violation of any procedural due process right. Defendant contends that there is no case law to support the finding that the availability of a disability discharge of an individual's student loan obligations constitutes a property right protected by the Due Process Clause.

Courts have found a sufficient property interest in a wide variety of government services. In *Daniels v. Woodbury County, Iowa,* 742 F.2d 1128 (8th Cir.1984), the court found the plaintiffs were entitled to due process protection after considering a local general relief program operated in Woodbury County, Iowa. After describing the general requirements for a property interest, the court found that the plaintiffs had a legitimate claim of entitlement to the local general relief payments. The court reviewed the underlying Iowa statutes which provided that a county "shall" provide relief for poor persons. *Id.* at 1132. The court noted that once an applicant meets the established conditions, the county was required to deem the applicant eligible for relief and thus the property interest was created. *Id.; See also Griffeth v. Detrich,* 603 F.2d 118 (9th Cir.1979) (After considering a county general relief assistance program, the Ninth Circuit found that there was a sufficient property interest to justify due process protection for applicants of those benefits.).

In *Kapps v. Wing,* 404 F.3d 105 (2nd Cir.2005), the court held that an energy assistance applicant had a property interest sufficient to implicate due process. The court reviewed the underlying program and noted that once an applicant had established that the eligibility requirements were met, the applicant was required to receive the energy assistance. In *Mallette v. County Employees' Ret. Sys. II,* 91 F.3d 630 (4th Cir.1996), an applicant for a city disability pension claimed a due process violation. The court ultimately held that the application for disability benefits did constitute a property interest for purposes of due process protection after finding that under the city retirement system regulations there was a legitimate expectation of receiving benefits once disability was established. *Id.* at 640. *See also Dealy v. Heckler,* 616 F.Supp. 880 (W.D.Mo.1984) (the court held that an applicant for Social Security disability benefits had established a legitimate claim of entitlement so as to implicate a property interest and trigger due process restrictions on government action.).

The DOE argues that plaintiffs do not have a property interest in a disability discharge and contends that this Court should look to bankruptcy cases for guidance. However, the bankruptcy cases cited by defendant are not based on the same statutory structure. The statutory language involved in disability discharges is markedly different from bankruptcy discharges and the Court will not analyze the present case in that context.

After consideration of the evidence in the record, like the Court in *Daniels,* this Court finds that the statutory language, specifically 20 U.S.C. § 1087(a), creates an expectation in the discharge of a borrower's liability on their student loan obligations for an individual who meets the eligibility requirements. This expectation is further elevated after the individual is initially determined by the DOE to be permanently and totally disabled, as both plaintiffs were in this case. The statutory language used is mandatory—if the student becomes permanently and totally disabled, the Secretary *shall* discharge the borrower's liability.

Defendant correctly points out that the determination of permanent and total disability must be determined "in accordance with the regulations of the Secretary." Based on this requirement, defendant argues that the Secretary is given unbounded discretion in its determination of whether an individual is permanently and totally disabled. As a result, the DOE contends, since the agency has unbounded discretion, then the interest is not protected by procedural due process. *Sykes v. City of Gentry, Arkansas,* 114 F.3d 829, 830 (8th Cir. 1997).

In *Sykes,* a police chief was hired under a state statute that allowed a mayor to remove employees "for cause." Two weeks after the police chief was hired, the law was changed and the "for cause" requirement was eliminated. The new provision gave mayors complete authority to hire and fire all department heads. Several months later the police chief was fired. The Eighth Circuit rejected the police chief's argument that he must be fired "for cause." The court noted that the legislature may create the property interest in employment, but it had complete authority to remove that property interest, which it did with the enactment of the new provision. The court found that when the statute was changed and the "for cause" requirement was eliminated, the mayor had complete authority to terminate department heads without cause. However, the present case is not analogous to *Sykes.* The statute in question does not afford the DOE unfettered discretion in making the determination of whether an applicant is permanently and totally disabled. The decision must be made in accordance with the regulations of the Secretary. Those regulations provide specific and definable criteria to guide the DOE's permanently and totally disabled determination. If an applicant meets all of the conditions delineated within the statutory language and the Secretary's regulations, that applicant must be awarded a disability discharge. The Court finds that the Secretary is not given unfettered or unbounded discretion in its determination of whether an individual is permanently and totally disabled.

The statute provides that if an applicant establishes that he or she is permanently and totally disabled, the DOE "shall" discharge the student loan obligation. 20 U.S.C. § 1087(a). The Secretary's regulations provide a potential applicant with a definition of disability, 34 C.F.R. § 682.200(b), and explain how an application for disability discharge should be presented to the agency, 34 C.F.R. § 685.213. Both plaintiffs were initially determined to be permanently and totally disabled by the DOE. Plaintiffs met the initial requirements and were immediately notified.

This initial grant of a disability discharge confers immediate benefits on the applicant. All collection efforts on the outstanding debt are ceased, 34 C.F.R. § 685.213(a)(ii), and during the conditional discharge period the debtor is not required to make payments of principal or interest on the loan, § 685.213(d)(1). If a borrower is receiving Social Security disability or retirement benefits, collection efforts to offset the receipt of Social Security benefits will stop. The plaintiffs have a legitimate claim of entitlement to the discharge, particularly after they were initially determined to satisfy the definition of permanently and totally disabled. After a thorough review, the Court finds that a protected property interest does exist.

(ii) *Were the plaintiffs afforded constitutional due process?*

■ Once a property interest has been established, the question becomes what process should be afforded. It is well-settled that "[d]ue process is a flexible concept and a determination of what process is due, or what notice is adequate, depends upon the particular circumstances involved." *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir.1997). The fundamental requirement of due process is that there be an opportunity to be heard at a meaningful time and in meaningful manner. In determining the adequacy of an agency's procedures, the U.S. Supreme Court has set forth a test requiring consideration of three factors: (1) the private interest that will be affected by the governmental action, (2) the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of requiring additional or substitute procedures, and (3) the governmental interest involved, including the burdens that the additional or substitute procedures would create. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

First, the Court looks to the private interest that will be affected by the denial of a disability discharge. After a denial of an applicant's disability discharge, the individual's student loan obligation will remain (or, in this case, return to) collection status and the loan amount will continue to collect interest at the contractual rate, which could significantly increase the monetary obligation on the loan. The individual will be faced with the full extent of the collections process, including the receipt of collection letters and telephone calls demanding payment. Any tax refunds owed to the individual can be seized because of the outstanding federal debt. 31 U.S.C. § 3720A. The DOE, or one of its agents, could file suit to obtain judgment against the debtor and, along with that judgment, attach the individual's automobiles, home or any other property not specifically exempt from garnishment and attachment.

Additionally, an individual debtor who receives Social Security disability benefits can have those benefits attached to repay the delinquent student loan. 31 U.S.C. § 3716. A disabled person can have up to fifteen percent of her monthly check seized to pay for the outstanding loan obligation. Since there is no statute of limitations on federally insured student loans, this fifteen percent reduction in Social Security disability or retirement benefits can continue until death. *Lockhart v. United States*, 546 U.S. 142, 126 S.Ct. 699, 163 L.Ed.2d 557 (2005). On this point, the DOE offers little to rebut the notion that the private interest involved is significant. The failure to receive a prompt and accurate disability discharge determination can cost an individual debtor a significant amount of money throughout their lifetime. Often the applicant seeking a disability determination on their loan, like the plaintiffs in this case, are already faced with a cumbersome monetary situation prior to the employ-

ment of any garnishment or attachment methods at the DOE's disposal.

The second factor the Court looks to is the risk of an erroneous deprivation of the private interest through the procedures used, along with the probable value, if any, of requiring additional or substitute procedures. All parties agree that the statute in question does not authorize a full, trial-type hearing and the procedure specifications in 5 U.S.C. § 554 are not required. The DOE argues that the process available under the circumstances (the letter to the doctor and the post-deprivation letter to the borrower with a contact telephone number), while admittedly not elaborate, is adequate and commensurate with the minimal hardship to borrowers in the plaintiffs' situation. Plaintiffs argue that the procedures currently used have a high risk of an erroneous deprivation and requiring additional procedures would dramatically reduce the risk of such a deprivation.

In this case, plaintiffs submitted requests for a disability discharge to the servicing agency on their loan. The servicing agency made a preliminary determination, based upon information provided by plaintiffs' doctors, that plaintiffs met the definition of total and permanent disability. Plaintiff Higgins was provided a notice stating that her total and permanent disability had been preliminarily approved and that her case would be sent to the disability discharge loan servicing center. The notice does not provide any opportunity for plaintiff to submit additional evidence, present written or oral information, learn what additional evidence may be needed or obtain information concerning the standards to be applied. The notice simply states that her preliminary request will either be approved or denied and informs plaintiff of a toll free telephone number to contact if she should have questions about the status of the loan discharge application. The next notice that Higgins received was a notice reversing the preliminary determination and finding that she is not totally and permanently disabled.

Plaintiff Riggins submitted a doctor's certification on August 9, 2007, which indicated that she was unable to work in any capacity. The servicing agency contacted Riggins' doctor on August 30, 2007, and the doctor provided some missing information concerning the license number. The agent noted that the doctor once again confirmed that Riggins was unable to work. On December 20, 2007, Riggins received notice that even though she was given a preliminary determination that she was totally and permanently disabled, her claim had been reviewed and it was determined that she did not meet "FSA(s) definition of total and permanent disability for the following reason: medical review failure." The notice does not provide any opportunity for plaintiff to submit additional evidence, present written or oral information, learn what additional evidence may be needed or obtain information concerning the standards to be applied

While a trial-type hearing is not required, the Due Process Clause still requires that an aggrieved party be given an opportunity to be heard at a meaningful time and in a meaningful manner. In this case, plaintiffs were not given a minimal opportunity to submit additional information and they had no knowledge what evidence was being considered with regard to their claims. Plaintiffs were unaware of the standard to be applied to their claims and had no opportunity to present even a minimal amount of additional evidence in support. Plaintiffs were both sent similar notices stating that their request for a total and permanent disability discharge was denied. The notice states that they had received a preliminary determination that they were eligible, but upon "further review of your discharge application and

supporting documentation" the plaintiffs did not meet the definition of "total and permanent disability for the following reason: medical review failure." The notice informs plaintiffs that their loans will be returned to payment status and they will be contacted regarding payment arrangements.

In *Grijalva v. Shalala*, 152 F.3d 1115 (9th Cir.1998), the court held that Medicare beneficiaries were denied due process when notices failed to provide an adequate explanation for the denial of Medicare benefits. With regard to the risk of erroneous determinations, the court noted "the appeal rights and other procedural protections available to Medicare beneficiaries are meaningless if the beneficiaries are unaware of the reasons for service denial and therefore cannot argue against the denial." *Id.* at 1122. In *Gray Panthers v. Schweiker*, 652 F.2d 146 (D.C.Cir.1980), Congress eliminated Medicare hearings for claims in dispute of less than $100.00. In holding that a blanket preclusion of oral hearings constituted a denial of due process, the court noted: "Without notice of the specific reasons for denial, a claimant is reduced to guessing what evidence can or should be submitted in response and driven to responding to every possible argument against denial at the risk of missing the critical one altogether." *Id.* at 168–69. In this case, the Court finds that the process utilized presents a significant possibility of an erroneous deprivation. For example, because an applicant has no knowledge of what additional evidence is required after a preliminary determination of disability nor given any opportunity to present additional evidence upon request of the agency, an unresponsive doctor or a doctor that provides inadequate responses to the agency's follow-up requests can be the sole reason the disability application is denied.

The third factor for the Court to consider is the governmental interest involved, including the burdens that the additional or substitute procedures would create. The DOE argues that more elaborate and detailed procedures would create significant burdens on the DOE. In this case, both plaintiffs had their conditional disability discharges cancelled after the DOE was not satisfied with the responses, or lack thereof, submitted by plaintiffs' doctors. The DOE contends that requesting updated medical information from a borrower's doctor is the most efficient and cost-effective manner to ensure that borrowers continue to meet the requirements for a total and permanent disability discharge.

After review of the evidence, the Court does not agree with the DOE's contention that additional requirements would create significant burdens on the agency. Plaintiffs submitted all of the appropriate documentation required by the Secretary's regulations and were preliminarily determined to be totally and permanently disabled. There is no evidence that plaintiffs were notified that additional evidence might be required to make their preliminary disability determination permanent. The Secretary never notified plaintiffs that their claims were in doubt. The Court finds that some of the options available to the DOE—a letter to the applicant explaining why their preliminary determination is in doubt and advising her of what additional evidence is needed, an explanation of the standard an applicant needs to prove and a mechanism whereby an applicant could submit additional evidence in support of their claim—create minimal burdens as compared to the significant private interest that will be affected by the denial of a disability discharge.

Even more concerning to the Court is the fact that the plaintiffs did not receive

adequate notice of the reasons for their denial. Plaintiffs were both sent notices that their conditional discharges were cancelled. The notice states that they had received a preliminary determination that they were eligible, but upon "further review of your discharge application and supporting documentation" the plaintiffs did not meet the definition of "total and permanent disability for the following reason: medical review failure." The claims were denied for "medical review failure," but the term is not defined in the letter. In response to Plaintiffs' Interrogatories numbers 9 and 10, the DOE stated that "a 'medical review failure' can have several meanings depending on the circumstances." The vague nature of the term leaves an applicant unclear about the actual basis for the denial of their claim. The notice also fails to apprise the applicant on how to proceed after receiving the denial.

In *Memphis Light,* 98 S.Ct. at 1567, the Court held a notice constitutionally deficient because it did not "provide notice reasonably calculated to apprise respondents of the availability of an administrative procedure to consider their complaint of erroneous billing . . ." Procedural protections are "meaningless if the beneficiaries are unaware of the reasons for service denial and therefore cannot argue against the denial." *Shalala,* 152 F.3d at 1122. Like the Court in *Shalala,* this Court finds that DOE failed to provide the plaintiffs with adequate notice of the reasons for their denial and this inadequate notice constitutes an unreasonable risk of erroneous deprivation. At the very least, the ease with which the DOE could provide a more detailed explanation of the term "medical review failure" to a denied applicant runs counter to their argument that more elaborate procedures would create a significant burden on the DOE.

A primary argument set forth by the DOE in their Response is that there is no impediment to a borrower—who has had a conditional discharge cancelled—from filing a new application for a disability discharge. In support, defendant argues that a borrower's conditional discharge runs from the date her disability started and not the date that any application is filed. 34 C.F.R. § 685.213(a)(1)(i). Consequently, if a borrower applies (or reapplies) for a disability discharge three years after the disability has consistently persisted and obtains DOE approval, after a brief delay for paperwork processing, any loans would be thereafter permanently discharged. Thus, if the DOE improvidently cancels a borrower's conditional discharge because of unresponsive doctors or inadequate responses from such doctors, the borrower is free to refile an application for a disability discharge using the same doctor or a different doctor. Plaintiffs argue that such an argument is flawed because there is no reason to assume that an improperly denied applicant would file a new application. Plaintiffs point out that in this case they provided all necessary information that was requested of them, they were granted a preliminary discharge subject to further review and then they received notice that there claims were being cancelled for "medical review failure." There is no reason to believe that after providing all of the requested information to the DOE and being denied that an applicant would immediately refile a new application.

The Court finds that the DOE's argument is an inadequate remedy for two reasons. First, there is no evidence that an applicant is notified of the refiling option upon receipt of their denial letter. Therefore, plaintiffs argument is reasonable—it is pure speculation that a plaintiff would immediately refile a new application after participating in the process in good faith and receiving a denial. Second, there is no guarantee that a truly disabled borrower who applies again would not meet

the same fate through no fault of their own. The same process will be utilized, which could lead to the same result.

Based on the foregoing discussion, the Court finds that plaintiffs Higgins and Riggins were denied due process in the evaluation of their disability discharge adjudications. Plaintiffs were not given a meaningful opportunity to support their claims with additional evidence, they were not advised of what additional evidence was needed to establish their claim and they were not provided with adequate notice of the reasons for their denial, specifically through the DOE's use of the term "medical review failure." The Court will remand the above-captioned case to the DOE for further administrative consideration of plaintiffs disability discharge applications. *Dargis v. Sheahan*, 526 F.3d 981, 989 (7th Cir.2008) (if a court finds a violation of due process, the court should order the agency to conduct a hearing rather than proceed to make a determination itself). Because of the determination that plaintiffs were denied due process and, accordingly, its decision to remand this case to the agency for further consideration, the Court will not analyze this case in the context of whether the DOE acted arbitrarily and capriciously.

Accordingly, it is hereby

ORDERED that plaintiffs Jennifer Higgins and Barbara Riggins' Motion for Judgment as a Matter of Law (Doc. # 39), even though titled as a Motion for Summary Judgment, is granted. It is further

ORDERED that defendant Margaret Spellings, Secretary of the Department of Education's Motion for Judgment as a Matter of Law (Doc. # 48) is denied. It is further

ORDERED that the above-captioned case is hereby remanded to the DOE for further administrative consideration of plaintiffs disability discharge applications as the Court finds that plaintiffs Higgins and Riggins were denied due process in the evaluation of their disability discharge adjudications.